IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:12-CR-140-BO-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER OF DETENTION PENDING** |
| | ) | **TRIAL** |
| DAYVON BRYAN RILEY, | ) | |
| | ) | |
| Defendant. | ) | |

This case came before the court on 28 January 2013 for an approximately four-hour hearing on the government's motions, pursuant to 18 U.S.C. § 3142(f), to detain defendant, Dayvon Bryan Riley ("defendant"), and co-defendant Stevens pending trial. The court ruled on the motion as to defendant on 28 January 2013,[1] but continued the proceedings on the motion regarding co-defendant Stevens until the following day. This order memorializes the ruling on the motion relating to defendant and a separate order is being entered contemporaneously herewith on the motion relating to co-defendant Stevens.

At the hearing, the government presented the testimony of an agent with the U.S. Secret Service and introduced without objection two exhibits: a compilation of police reports relating to defendant's 2010 conviction in Connecticut (Gov.'s Ex. 1) and a photograph of co-defendant Stevens at a Walmart in Easton, Pennsylvania taken on 14 February 2012 (Gov.'s Ex. 2). The court also placed into evidence a copy of a protection order issued against co-defendant Stevens by a New York court on 24 October 2011. Defendant presented the testimony of the proposed third-party custodians, his mother and aunt. The court also reviewed the pretrial services report.

---

[1] The ruling begins at time stamp 4:45:35 in the recording of the hearing, which was held in the sixth floor courtroom.

After careful consideration pursuant to 18 U.S.C. § 3142(g) of the credible information and argument submitted, and based on the findings and reasons stated below and in open court, the court finds by a preponderance of the evidence that there is no condition or combination of conditions that will reasonably assure defendant's appearance as required, and by clear and convincing evidence that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community before trial if defendant is released. The government's motion is therefore GRANTED.

**Background**

Defendant was charged in each count of a six-count indictment on 20 December 2012 with: conspiracy to commit wire fraud beginning no later than March 2011, and continuing until in or about March 2012 in violation of 18 U.S.C. §§ 1343 and 2 (ct. 1); access device fraud and aiding and abetting the same on or about 7 March 2012 in violation of 18 U.S.C. §§ 1029(a)(1) and 2 (ct. 2); unlawful use of unauthorized access devices and aiding and abetting the same beginning no later than March 2011, and continuing until in or about March 2012 in violation of 18 U.S.C. §§ 1029(a)(2) and 2 (ct. 3); access device fraud involving use of more than one access device and receipt of $1,000 within a year and aiding and abetting the same beginning no later than March 2011, and continuing until in or about March 2012 in violation of 18 U.S.C. §§ 1029(a)(5) and 2 (ct. 4); fraud and related activity in connection with identification documents, authentication features, and information and aiding and abetting the same beginning no later than February 2012 and continuing until on or about 7 March 2012 in violation of 18 U.S.C. §§ 1028(a)(7) and 2 (ct. 5); and aggravated identity theft and aiding and abetting the same on or about 7 March 2012 in violations of 18 U.S.C. §§ 1028A(a)(1) and 2 (ct. 6).

The evidence presented at the hearing showed that the charges arise from a sophisticated scheme in which the co-conspirators obtained stolen account numbers from overseas, embossed such numbers onto the front of stock credit cards and encoded them onto the magnetic strips on the back of credit cards and prepaid debit cards, and used the counterfeit cards to purchase prepaid Visa cards, store gift cards, merchandise, services, and other items. Defendant and other co-conspirators lived in the Long Island, New York area and travelled on several occasions to other states along the East Coast making fraudulent purchases using the counterfeit credit and prepaid debit cards. The scheme involved over 700 fraudulent account numbers and thousands of dollars in fraudulent purchases.

Evidence of defendant's involvement in the conspiracy included: recovery of over 50 gift cards with a value exceeding $15,000 and over 20 counterfeit credit cards from defendant (3 credit cards were hidden in his pants and fell out when he was required to remove his boots) and 2 accomplices in Clinton, Connecticut on 8 November 2010 after their arrest for purchasing and, in the case of defendant, attempting to purchase gift cards with counterfeit credit cards at a Stop & Shop grocery store in Clinton (*see* Gov.'s Ex. 1)[2]; defendant's purchase of prepaid Visa debit cards with counterfeit credit cards at Food Lion grocery stores in Exmore and Onley, Virginia on 4 August 2011 (*see* Indict. ¶¶ 21, 22)[3]; recovery of 89 counterfeit credit cards from the minivan in which defendant and co-defendants Williams and Carter were travelling when they were stopped at the Chesapeake Bay Bridge Tunnel in Virginia on the same day, 4 August 2011, including 35 cards which defendant threw to the ground as he fled the scene of the stop on foot;

---

[2] The indictment alleges that the conspiracy began "at an exact time unknown to the Grand Jury, but no later than March 2011." (*See* Indict. ¶ 5). Thus, the indictment appears to encompass this offense conduct by defendant occurring prior to March 2011. Even if the Connecticut conduct were deemed not to be part of the conspiracy, it is relevant to the risk of danger and flight presented by defendant for purposes of detention.

[3] The paragraphs of the indictment cited correspond to testimony and other evidence presented at the detention hearing.

defendant's use—in certain instances with co-defendant Stevens—of counterfeit credit cards to buy gift cards (with a value over $2,000), prepaid Visa debit cards, and other items from a Home Depot and Walmart in Columbia, South Carolina and Bi-Lo grocery stores in Cayce and Florence, South Carolina between 5 March and 7 March 2012 (*see id.* ¶¶ 32, 34, 36, 37); use by defendant, who was accompanied by co-defendant Stevens, of several fraudulent credit cards at a Walmart in Lumberton, North Carolina on 7 March 2012 in an attempt to add $495 to a prepaid Visa debit card he had bought the previous day in one of the fraudulent transactions in Columbia, South Carolina (*see id.* ¶ 38); recovery of numerous items of evidence of the conspiracy from defendant and co-defendant Stevens when they were stopped by police in Harnett County, North Carolina, when travelling in defendant's car, on 7 March 2012, including 25 counterfeit credit cards and over 60 prepaid Visa cards (many hidden in the headliner of the car,[4] in a rear quarter panel of the car, and under a baby seat on the rear seat), over 10 gift cards, a laptop computer containing about 700 stolen account numbers (many of which were used in transactions previously described), New York probation paperwork for defendant, a Western Union receipt for the transfer of $460 to Vietnam, and 4 stolen medical records with patient financial information defendant had paid co-defendant Martinez to steal from the medical providers for which she worked in Long Island (*see id.* ¶ 39).[5]

## Discussion

The law requires that defendant be detained pending trial based on the following principal findings and reasons: evidence showing that the government has enough evidence to obtain defendant's conviction, including the evidence reviewed above; the fraud-related nature of

---

[4] The headliner is the interior liner abutting the windshield.

[5] Additional acts by co-defendant Stevens in furtherance of the conspiracy that were the subject of evidence presented at the hearing are described in the detention order relating to him.

4

the offenses charged; the circumstances of the offenses charged, including the sophistication of the alleged conspiracy, the interstate (and, indeed, international) nature of the offense conduct, the substantial scale of the conspiracy in terms of number and dollar value of the fraudulent transactions involved and its geographic scope, the substantial degree of defendant's participation in the conspiracy, his flight from officers during the 4 August 2011 traffic stop in Virginia, and his commission of all the alleged offenses while on pretrial release on related charges in varying states (*i.e.*, Connecticut, New York, and/or Virginia) and, for a portion of the period of offense conduct, on state probation (in New York since 18 October 2011); defendant's criminal record, including three misdemeanor convictions for related offense conduct (including one for the conduct in Connecticut) and pending charges in Virginia[6]; the danger of continued offense conduct by defendant if released; the substantial prison term defendant faces on the instant charges if convicted; the unsuitability of the proposed third-party custodial arrangements due to the extent of the risk of flight and danger presented by defendant; and the other findings and reasons stated in open court.

The court considered evidence offered as mitigating, but finds that the factors favoring detention outweigh such evidence. Although defendant does not have as extensive a record of criminal convictions as this court often sees, it shows a pattern of conduct like that charged in the indictment going back to November 2010. His participation in the conspiracy further demonstrates his disregard of the law. His commission of all the alleged offenses while on pretrial release and a portion of them while on probation substantiates specifically the likelihood that he will disregard any conditions of release this court could impose.

---

[6] Although the pretrial services report states that defendant faces pending charges in Harnett County, the attorney representing the government at the hearing stated her expectation that those charges would soon be dismissed in lieu of the instant prosecution.

The court has also considered the fact that defendant turned himself in. But he lacks prior experience in the federal system and had not confronted firsthand the implications of the federal prosecution against him, including learning as he did at the hearing of the strong case the government has against him. Notably, he has received no incarceration for any of his fraud-related misdemeanor convictions.

Defendant also cited his diabetes as grounds for his release, stating that he had not been receiving diabetic-compliant meals where he has been incarcerated. Assuming without deciding that such a concern can be a basis for release, defendant certainly has not demonstrated that the facility where he is presently housed or the other facilities at which he may be housed during pretrial detention are either unable or unwilling to address this concern.

In sum, defendant has demonstrated the willingness and ability to travel interstate in furtherance of criminal activity and to obtain funds through fraud on a large scale. Thus, should he decide to flee again, as he did at the Virginia traffic stop, he would appear well equipped to evade law enforcement and to engage in further fraudulent activity to support himself. And he unquestionably has a strong incentive to flee. It arises, of course, from the prospect of conviction in this case, the substantial term of imprisonment that could result, the pending Virginia charges, and the knowledge he now has that the government has a very strong case against him. After careful consideration, the court has identified no condition or combination of conditions that reasonably addresses these risks of flight and danger.

## Conclusion

IT IS THEREFORE ORDERED that defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in

custody pending appeal. Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

This, the 31st day of January 2013.

_____
James E. Gates
United States Magistrate Judge