IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:12-CR-140-BO1

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>Plaintiff, )<br>)<br>v. )<br>)  ORDER<br>)<br>DAYVON BRYAN RILEY, )<br>Defendant. )<br>) | |

This matter is before the Court on defendant's second motion to suppress [DE 94] and motion for additional discovery [DE 105]. The defendant seeks to suppress evidence obtained by officers during a vehicle stop. For the reasons stated herein, the defendant's motions are DENIED.

## BACKGROUND

Defendant Riley requests suppression of evidence seized during a traffic stop on March 7, 2012. The parties agree that defendant Riley was stopped by officers on March 7, 2012 for a seatbelt violation, beyond that their versions of the facts differ greatly. As such, it is this Court's role to observe the witnesses and evidence presented to it and weigh the credibility of each in ruling on the defendant's motion. *See United States v. Locklear*, 829 F.2d 1314, 1317 (4th Cir. 1987). A hearing on this matter was held in Raleigh, North Carolina on May 3, 2013.

Arresting Officers Freeman and Swagger both testified at the hearing on this matter. On March 7, 2012, Officer Freeman was driving a patrol car in Harnett County and Officer Swagger was a passenger in that vehicle. Officer Freeman was employed by the Granville County Sheriff, but was working in Harnett County pursuant to a mutual aid agreement between the two

1

departments. Both officers testified that they observed a red Camaro with New York plates exiting I-95 northbound. The car exited the interstate, made a left turn, and proceeded down the on ramp to travel southbound on I-95. Officers Freeman and Swagger observed that the occupants of the vehicle, a driver and one passenger, were not wearing the seatbelts. As such, the officers initiated a traffic stop on the I-95 southbound on ramp. Officer Freeman approached the vehicle and requested that the driver, defendant Riley, return to the patrol vehicle with him. The officer neither searched defendant Riley's person, nor constrained the defendant in any way during the initial traffic stop.

In the patrol car Officer Freeman spoke with defendant Riley and found him to be evasive and unable to answer simple questions. For example, despite professing to know his passenger, defendant Riley was unable to tell Officer Freeman his friend's name. While Officer Freeman and defendant Riley were in the patrol vehicle, Officer Swagger spoke with Riley's passenger, defendant Stevens. Defendant Stevens explained that he and Riley were music producers and they were on their way to New York. This struck Officer Swagger as unusual since the defendants were attempting to enter the southbound lane of I-95.

At the conclusion of Officer Freeman's conversation with defendant Riley in the patrol car he handed him a warning citation for the seatbelt violation. At that point, defendant Riley was not constrained, he had not been subjected to a search by the officers, and he was free to leave. As defendant Riley was exiting the vehicle, Officer Freeman asked him if there were any illegal items in the vehicle. Defendant Riley denied the presence of any contraband. Officer Freeman then requested permission to search the vehicle, which Officer Freeman states was given. Officer Swagger was still in conversation with defendant Stevens who had remained in the vehicle and, therefore, testified that he had not heard the conversation between Riley and

Officer Freeman. Nevertheless, upon seeing that defendant Riley was agitated he asked whether he had consented to the search. Riley responded that he had, but that he did not know why a search was necessary. In his briefs to the Court defendant Riley denies consenting to the search. It was not customary for Officer Freeman or Swagger to use written consent forms before searching a vehicle and one was not used in this stop.

A search of the vehicle resulted in the discovery of fraudulent credit and debit cards that had been stowed in the headliner of the vehicle. The officers also noted other items that evidenced the fraud. The Court finds the officers' testimony to be consistent and credible.

Defendant Riley now seeks to suppress all evidence that was found during the search at issue.

## DISCUSSION

I. DEFENDANT RILEY'S CONSENT TO THE VEHICLE SEARCH TRIGGERED A CONSENSUAL INTERACTION NOT SUBJECT TO FOURTH AMENDMENT SCRUTINY.

To delineate boundaries for police conduct in routine traffic stops the Fourth Circuit applies the Supreme Court's *Terry* stop analysis. *United States v. Rusher*, 966 F.2d 868 (4th Cir. 1992)(citing *Terry v. Ohio*, 392 U.S. 1 (1968)). Under that approach the court considers "whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S., at 20.

Traffic stops, such as the one at issue here, may be prolonged by either the reasonable suspicion of a crime or by the driver's consent. *United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008). In determining whether an officer-suspect interaction is a detention or a "consensual encounter" the Fourth Circuit applies the Supreme Court's reasoning in *Florida v. Bostick*, 501 U.S. 429 (1991). *See United States v. Rusher*, 966 F.2d 868, 877 (4th Cir. 1992)(citing *Bostick*).

3

The *Bostick* court noted that the appropriate inquiry in assessing such an interaction is whether a reasonable person would feel free to decline the police officer's requests thereby terminating the encounter. *Bostick*, 501 U.S. 429, at 434. If a reasonable person would have felt such freedom, the interaction was a consensual one that did not trigger Fourth Amendment limitations. *Id.* If at any point, an interaction loses its consensual nature then it will be subject to Fourth Amendment scrutiny. *Id.* Moreover, the defendant's consent must be voluntarily given as determined by the totality of the circumstances. *Rusher*, 966 F.2d at 877 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)).

In *Rusher*, the court found that the citing police officer effectively concluded a traffic stop when he informed the defendant that he was "free to go." 966 F.2d at 877. This statement effectively released the defendant from any officer-imposed detention and, since he was free to leave, the remainder of the defendant's interaction with the police officer was consensual. The *Rusher* court did not apply the exclusionary rule to the drugs, cash, and firearms that were recovered during the ensuing search because the circumstances indicated that the defendant's consent had been voluntarily given.

Here, the initial vehicle stop was terminated at the time Officer Freeman handed defendant Riley his citation for the seatbelt warning and signaled that he was free to leave. As defendant Riley began to exit the patrol vehicle it was clear that he was free to leave; as in *Rusher* the officer-imposed detention was listed at this time and the defendant was free to go. Defendant Riley had not been searched at this time and he was not physically constrained in any way. Officer Freeman's subsequent question regarding the contents of the vehicle refreshed his contact with the defendant, but this time the interaction was consensual. The defendant was under no obligation to answer the officer's questions, but he did so freely. The totality of the

4

circumstances indicates that consent was voluntarily given. Further, the defendant reiterated his consent to Officer Swagger. As such, the defendant's consent was valid and the ensuing search was not subject to Fourth Amendment limitations.

> II. THE PROPER INQUIRY FOR EVALUATING EVIDENTIARY CHALLENGES UNDER THE EXCLUSIONARY RULE IS A CONSTITUTIONAL ONE; THE RULE IS NOT NECESSARILY TRIGGERED BY VIOLATIONS OF STATE LAW.

The Fourth Circuit has determined that a federal court's Fourth Amendment inquiry does not turn "on whether a state officer violated a state law in securing evidence, [but] whether the actions of the state officials in securing evidence violated the Fourth Amendment to the U.S. Constitution." *United States v. Clyburn*, 24 F.3d 613, 616 (4th Cir. 1994). Defendant Riley, however, argued to the Court that the initial traffic stop was not valid, and therefore the evidence seized should be excluded, because the mutual aid agreement between Harnett and Granville counties violated state law. In support of his position that state law is controlling on this matter, the defendant cited *United States v. Di Re*, 332 U.S. 581 (1948). That case is completely inapposite to the matter at hand in that it relates to the issuance of arrest warrants and the United States Supreme Court has explicitly declined to extend its *Di Re* opinion to the arena of Fourth Amendment limitations. *See Virginia v. Moore*, 553 U.S. 164, 170-73 (2008) (stating that "[n]either *Di Re* nor the cases following it held that violations of state arrest law are also violations of the Fourth Amendment . . . [and] when States go above the Fourth Amendment minimum, the Constitution's protections concerning search and seizure remain the same.") As the defendant relies on alleged violations of state law and does not allege constitutional violations, his argument must fail. For these reasons, the defendant's motion is denied.

III. THE DEFENDANT'S MOTION FOR ADDITIONAL DISCOVERY IS DENIED AS MOOT.

The defendant requests the production of all video and audio recordings of the traffic stop at issue, all radio logs that document the traffic stop at issue, all documents relating to whether the defendant granted consent to search the vehicle, and the names of the Granville County Sheriff's Deputies that executed the traffic stop at issue. The government is already obligated pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), its progeny, and Federal Rule of Criminal Procedure 16 to timely disclose the material the defendant seeks. Further, the government did provide such evidence on or about February 13, 2013. As the government has not failed to meet its obligations at this time, the Court finds that such an order is unnecessary and, as such denies the defendant's motion.

## CONCLUSION

For the foregoing reasons, the defendant's motions are DENIED.

SO ORDERED, this **15** day of May, 2013.

*[signature]*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE